# Philadelphia, to use, *v.* Monument Cemetery Co., Appellant.

### *Paving—Repairs—Nuisance.*

To impose the duty of repairing a pavement upon a landowner, it is not necessary that the pavement should be a dangerous public nuisance; if it is in bad condition and unsafe, the owner must repair it.

### *Decision of public officers as to repairing.*

The decision of public authorities upon the necessity of repairing a pavement is not conclusive, but the evidence of public officers whose duty it is to deal with the pavement, is entitled to the most serious consideration, as the city is responsible for the condition of the highways.

### *Weight of evidence—Charge.*

In an action by a contractor against a landowner on a municipal claim for paving, where three witnesses testify that the paving was unnecessary, and fourteen testify to the contrary effect, it is not error for the court to refer to the number of witnesses on each side and charge that the jury should decide the case according to the weight of evidence.

Argued Jan. 18, 1892.    Appeal, No. 81, Jan. T., 1892, by defendant, from judgment of C. P. No. 4, March T., 1890, No. 112, on verdict for plaintiff.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Scire facias sur municipal claim by the city of Philadelphia to the use of Joseph McDonald against the Monument Cemetery Co., owner, to recover the price of paving a sidewalk.

At the trial the defendant claimed that the work was unnecessary.    THAYER, P. J., charged in part as follows:

["Now, of course, the mere decision of the city authorities that the streets required repaving, however convincing that might be to one who is a disinterested person, is not conclusive upon that question, and hence the fact has been permitted to be controverted by the defendant; the law allows the defendant to controvert the charge of the plaintiff that the streets were out of repair and required paving.    That issue has been directly raised, and it is the only issue in the case, and while I say the decision of the public authorities upon that question is not final and conclusive upon the defendants, the evidence of the public officers, who are called upon by the law to deal

with it and to decide upon it, is entitled to all the weight which, in your opinion, it may intrinsically deserve. The city of Philadelphia is responsible for the condition of its highways ; if accidents happen by reason of their being out of repair the city is responsible. The city gives the owner of the property an opportunity to do these repairs himself. If he does not do it, it is the bounden duty of the city to do it ; if the city neglects to do it, it is responsible to anybody who is injured in damages for not doing it. So that in every point of view the claim of the city, if these pavements were out of repair, to be indemnified for the work it has done in making the necessary repairs, stands on the firmest foundations. They merely ask for indemnity for the expense of doing that which it was the defendants' duty to do, and for the not doing of which they would have been responsible if any damage had been suffered in consequence of the pavement being out of repair.] [2]

[The question in the case is, what was the condition of these footwalks before the city notified the defendants to repair them, before the city undertook to do it themselves. It has been said that the condition of the pavement must amount to a public nuisance. Any street which is out of repair may be said, in a certain sense, to be a nuisance, that is, it is an inconvenience, an injury, and a damage to the public. But it is not necessary for you to be of opinion that the defendants would have been indictable for maintaining a nuisance, nor are you to try this case as if the defendants were in a criminal court being tried upon an indictment for maintaining a nuisance. That is not the present attitude of the case at all ; what you are trying is a mere civil action, in which the city claims that it shall be reimbursed for necessary work done upon the sidewalks, in which the defendants are alleged to have neglected their duty, in consequence of which the city was obliged to perform the work itself.

In determining that question, the simple question is whether the old pavements were good, safe, and sufficient pavements. That is the criterion. Were they good, safe, and sufficient ? Were they so good, sufficient, and safe that the work or repairing was *a totally unnecessary work, a work of supererogation ?* If the old pavements were in a bad condition and were unsafe

and required repairing, of course it is not only the right, but, as I have said a little while ago, it is the imperative duty of the city authorities to do the work, if the defendants neglected to do it themselves.] [1]

[Upon that question, which is the only question you have to deal with, namely, whether the old pavements were good and safe and sufficient, three witnesses have been examined by the defendants, who have testified that, in their opinions, the old pavement was good enough, and that they saw no defects in it. These three witnesses are, respectively, Mr. Birmingham, who was the superintendent of the defendants; Mr. Marshall, who was one of their managers, and Mr. Craig, who seems to have been a private citizen, standing indifferent between the parties.

On the other hand, the city has called no less than fourteen witnesses, the drift of all of whose testimony is that the old pavements were bad, that they were insufficient; several of the witnesses have said that they were positively dangerous. Many of these witnesses are public officials, who considered it their duty to examine into the matter. Their testimony is entitled to due weight at your hands. If you consider only the number of the witnesses alone, and if you assume all the witnesses to be equally disinterested and impartial, you have fourteen witnesses testifying that this pavement was a bad pavement and in bad repair, against the three who have testified that in their opinion it was not. It is hardly necessary to say and impress upon you in a case like that, that it is your duty to decide the case according to the weight of the evidence."] [3]

The defendants submitted the following points :—

1. That unless the jury find the pavement which was condemned was a dangerous public nuisance, there can be no recovery on this lien.

2. That the condemnation of the pavement by the city authorities was not sufficient evidence that the pavement was dangerous.

The court, in answer to these points, said :—

" I have said all I intend to say about these points. I consider that I have answered them in the general charge."

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1, 2) the answers to defendants' points,

quoting points, answers, and the portions of the charge in brackets appropriate as answers to the points, and (3) the concluding portion of the charge in brackets, quoting it.

*John B. Uhle*, for appellants.

*William W. Smithers*, for appellee, was not heard.

PER CURIAM, January 18, 1892.
Judgment affirmed.


## Childs, Appellant, *v.* Gillespie.

[Marked to be reported.]

*Oil lease—Option.*

An oil lease of a portion of the lessor's farm contained the following clause : " It is further agreed that, after the first well is completed, provided it is a paying well, said second party (Childs), shall have the privilege of buying or leasing the unleased remainder of said Schuler's farm, provided he and said Schuler can agree upon terms within six months."

*Held*, that the clause did not confer an option in the ordinary sense of the word, as it provided no terms upon which a purchase or leasing could be made.

*Contract—Offer by telegraph—Acceptance.*

The above lease was executed on December 26, 1889.   On April 5, 1890, Schuler wrote to Childs : " I am offered $175 an acre and one sixth royalty.   As I agreed to give you first chance I want an answer by the 9th, or I will go ahead and lease."   The letter did not reach Childs until the 10th.   On April 7, Schuler telegraphed to Childs : " Offered $7,000 and one sixth, remainder of farm.   Answer immediately." meaning that he had been offered $7,000 and a royalty of one sixth for the remainder of the farm, and that Childs could have it at that price if he answered immediately.   The telegram was received by Childs on the forenoon of the same day.   On April 8, Schuler sold to other parties.   On April 9, Childs learned of the sale and sent a letter accepting the offer in the telegram.   Subsequently he tendered the purchase money to Schuler.   *Held*, that the acceptance was too late.

Argued Oct. 30, 1891.   Appeal, No. 212, Oct T., 1891, by plaintiff, from judgment of nonsuit of C. P. No. 1, Allegheny Co., June T., 1890, No. 720.   Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Ejectment by R. H. Childs and others against T. A. Gillespie and others to recover forty acres of land in Robinson township.